```
              UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
_____
LINDSIE WIRTH                         :
                                      :    No.:
     v.                               :
                                      :
REYNOLDS CONSUMER PRODUCTS LLC        :    JURY TRIAL DEMANDED
_____
```

CIVIL ACTION COMPLAINT

COMES NOW, Plaintiff, by counsel, and complains of defendant as follows:

JURISDICTION

1. This matter has federal jurisdiction pursuant to the Equal Pay Act of 1963, 29 U.S.C. Section 206 (d)(hereinafter "EPA").

PARTIES

2. Plaintiff Lindsie Wirth, is an adult individual who resides at 234 East Fells Street, Summit Hill, PA 18250.

3. Defendant, Reynolds Consumer Products LLC, is a limited liability company which is registered to conduct business in the Commonwealth of Pennsylvania with a place of business located at 31 Progress Ave, Tamaqua, PA 18252.

4. At all times material hereto, each defendant employed at

least 501 people at its facility in Tamaqua, PA (hereinafter "Tamaqua Core").

## *FACTS*

5. Plaintiff is female.

6. On or about May 7, 2012, plaintiff commenced employment with defendant at Tamaqua Core.

7. As of January 1, 2018, the range for the rate of pay for the various positions including Parts Specialists, Engineering Technicians and Maintenance Technicians at Tamaqua Core were grouped together as follows:

| Position | Minimum | Maximum |
|---|---|---|
| Engineering & Maintenance Technician/Parts Specialist | $26.33 | $29.49 |

8. The position of Parts Specialist was grouped with the positions of Engineering Technician and Maintenance Technician at Tamaqua Core because its was considered equally important and involved in the maintenance of the facility.

9. All Parts Specialists, Engineering Technicians and Maintenance Technicians employed by defendant at Tamaqua Core were of Male gender through March 25, 2018.

10. In 2016, a job description of the Parts Specialist was issued to show the wide range of responsibilities of the position and this job description justified the pay rate

applicable to the position and justified its placement in the same pay scale with Engineering Technicians and Maintenance Technicians.

11. All Parts Specialists employed after January 1, 2018 (all male), were paid pursuant to the January 1, 2018 pay scale noted above.

12. On March 25, 2018, plaintiff was promoted from the position of Shipping and Receiving Clerk to the position of Parts Specialist.

13. At the time of plaintiff's promotion to Parts Specialist on March 25, 2018, defendant's January 1, 2018 standard pay ranges applicable to the position of Parts Specialist were still in force.

14. At the time of her promotion to Parts Specialist, plaintiff's rate of pay inexplicably was $17.30 per hour and was not immediately raised to the minimum of $26.33 per hour for the position of Parts Specialist as indicated on the January 1, 2018 pay scale noted above.

15. On June 24, 2018, defendant first raised plaintiff's pay to the minimum of $26.33 per hour as indicated on the January 1, 2018 pay scale noted above.

16. Thus, plaintiff was paid $9.03 less per hour than her male counterparts between March 25, 2018 and June 24, 2018—a

period of 13 weeks, resulting an underpayment of at least $4,695.60 as compared to plaintiff's male counterparts.

17.  Plaintiff contends that she was intentionally not paid equal pay to her male counterparts based upon her female gender.

18.  Starting on January 1, 2019, the pay range for the Parts Specialists and Engineering and Maintenance Technicians at the Tamaqua Core was raised as follows:

| Position | Minimum | Maximum |
| --- | --- | --- |
| Engineering or Maintenance Technician/Parts Specialist | $27.05 | $30.30 |

19.  Plaintiff's pay was raised to $27.05 at this time.

20.  However, starting on January 1, 2020, defendant inexplicably separated plaintiff's Parts Specialist position from the pay scale for Engineering and Maintenance Technicians, and created a disparity in pay as follows:

| Position | Minimum | Maximum |
| --- | --- | --- |
| Parts Specialist | $27.05 | $30.30 |
| Engineering or Maintenance Technician/Parts Specialist | $29.00 | $32.50 |

21.  Plaintiff's supervisor, Jon Walters questioned plaintiff's new 2020 pay rate, informing his superiors that he was not included in the decision to change the pay rates and he wanted to know why.

22.  When Mr. Walters confronted Eric Weston (former male Technical Services Manager) about why he was not included in the

decision to change the pay rate for plaintiff, Mr. Weston warned Mr. Walters that if he did not "let it go" both he and plaintiff would be terminated.

23. Mr. Walters also asked Mr. Weston for a copy of plaintiff's job description but Mr. Weston never provided a copy.

24. The reason why the job description was requested was because pay scale rates were set based upon the job descriptions.

25. The trend to increase plaintiff's male counterparts' pay continued in 2021 and 2022, while plaintiff's (female) pay scale was reduced, resulting in the following pay disparities:

2021 Pay Scale:

| Position | Minimum | Maximum |
| --- | --- | --- |
| Parts Specialist | $20.00 | $25.00 |
| Engineering or Maintenance Technician/Parts Specialist | $29.00 | $33.00 |

2022 Pay Scale:

| Position | Minimum | Maximum |
| --- | --- | --- |
| Parts Specialist | $22.00 | $26.00 |
| Engineering or Maintenance Technician/Parts Specialist | $31.00 | $35.00 |

26. Since January 1, 2021, plaintiff (female) alleges that her pay scale was purposefully reduced while her male counterparts' pay scale was increased, resulting in a larger disparity in pay related solely to her gender.

27. After Mr. Weston left employment with defendant in about March 2022, plaintiff was finally able to obtain a copy of the job description on which her pay scale was determined, which was first requested by Mr. Walters in early 2020.

28. In an effort to falsely justify plaintiff's lower pay scale, defendant produced a purposely deficient and inaccurate job description for the Parts Specialist Position which did not fully describe plaintiff's actual job duties and responsibilities.

29. Plaintiff's supervisor, Jon Walters, pointed out in emails to upper management in March and April 2022 that the original detailed 2016 job description was a better description of her actual job duties and that if the correct job description is applied, plaintiff was entitled to a raise in pay.

30. Due to the pay disparity, plaintiff complained to HR numerous times between January 1, 2020 and her last day of work on April 21, 2022, but defendant refused to correct the disparity by bringing plaintiff's pay rate back in line with that of her male counterparts.

31. Plaintiff reluctantly resigned from her position on April 21, 2022 because of defendant's reluctance to correct the pay disparity that she and Mr. Walters had pointed out to upper management.

32  Defendant's proffered reason for paying plaintiff less than her male counterparts was false and was mere pretext to mask the discriminatory reason for its actions.

33. The true reason why defendant paid plaintiff less than her male counterparts was based upon her female gender.

34. Defendant acted by and through its agents and employees, who had authority to hire, fire, discipline, and determine the pay rate for plaintiff.

## COUNT 1— VIOLATION OF THE EQUAL PAY ACT

35. Plaintiff repeats paragraphs 1-34 as if more fully set forth herein.

36. Plaintiff contends that she was underpaid as compared to her similarly situated male counterparts based upon her gender in violation of the EPA.

37. As a result of defendant's unlawful discriminatory conduct, plaintiff has suffered lost pay and other financial losses.

38. As a result of defendant's unlawful discriminatory conduct, plaintiff has suffered compensatory damages for emotional pain and suffering.

39. Defendant acted with malice by intentionally discriminating against plaintiff and thus is liable to plaintiff for punitive damages.

40. Plaintiff is entitled to recover reasonable attorney's fees and costs if he is successful at trial in this matter.

41. By and through its conduct, defendant violated the EPA by intentionally discriminating against plaintiff and paying her less than her similarly situated male counterparts due solely to her female gender.

WHEREFORE, plaintiff demands that judgment be entered in her favor on Count 1 against defendant for lost pay and other financial losses, compensatory damages for emotional pain and suffering, punitive damages, attorneys' fees, costs, interest, and any other relief that this Honorable Court deems to be fair and proper.

/s/ Samuel A. Dion
_____
Samuel A. Dion, Esq.
Dion & Goldberger
1845 Walnut Street, Ste. 1199
Philadelphia, PA 19103
215-546-6033 (tel)
215-546-6269 (fax)
samueldion@aol.com
Attorneys for Plaintiff